UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 12 2019 ★

BROOKLYN OFFICE

UNITED STATES OF AMERICA

– against –

KEITH LIWANAG,

Defendant.

17-CR-00677

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**Parties**

For United States

For Defendant

**Appearances**

Erin Reid
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6448

Florian Miedel
Miedel & Mysliwiec, LLP
80 Broad Street
Suite 1900
New York, NY 10004
212-616-3042

Jack B. Weinstein, Senior United States District Judge:

## Table of Contents

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Instant Offense | 2 |
| III. | Guilty Plea | 3 |
| IV. | Sentencing Hearing | 3 |
| V. | Guidelines Range and Statutory Minimum | 3 |
| VI. | Law | 4 |
| VII. | 18 U.S.C. § 3553(a) Considerations | 5 |
| | A. Defendant's Background | 5 |
| | B. Seriousness of Conduct | 6 |
| VIII. | Sentence | 7 |
| IX. | Conclusion | 9 |

### I. Introduction

Keith Liwanag ("Liwanag" or "the defendant") pled guilty to one count of sexual exploitation of a child. He coerced economically vulnerable women into engaging in sexually explicit conduct with young children in exchange for payments, and he recorded and distributed the content.

This serious offense is likely to cause continuing psychological and emotional damage to the women and children involved. The defendant will require considerable mental health treatment and rehabilitation so he can be a productive member of society. A lengthy prison sentence in which he faces immense challenges and dangerous conditions will do more harm than good. Nonetheless, because the offense to which the defendant pled guilty carries a mandatory minimum sentence of 15 years, the court sentences him to that lengthy term of incarceration—15 years.

## II. Instant Offense

The defendant, together with others, "employed, used, persuaded, induced, enticed, and coerced a minor ... to engage in sexually explicit conduct for the purpose of producing ... visual depictions of [the] conduct." Presentence Investigation Report ("PSR") ¶ 1; *see also* 18 U.S.C. § 2251(a); *id.* § 2251(e). Liwanag knew or had reason to know that such visual depictions would be transported and transmitted through the United States and internationally. PSR ¶ 1.

On July 12, 2016, Facebook filed a "CyberTip" to "CyberTipline" to report a Facebook account that was being used to persuade women to engage in sexual acts with children in exchange for money. *Id.* ¶ 5. CyberTipline is a national clearinghouse created by the National Center for Missing and Exploited Children to obtain leads of sexual exploitation crimes involving children. *Id.* ¶¶ 3–4. The reported account belonged to the defendant. *Id.* ¶ 5. After the issuance of a search warrant, an investigating agent from the Department of Homeland Security found multiple communications sent through this account requesting child pornography. *Id.* ¶¶ 3, 6. Many of the communications referred to the Philippines or included messages written in Filipino. *Id.* ¶ 6.

These communications demonstrate that Liwanag asked several female Facebook users to engage in lewd sexual conduct with young children in exchange for money. *Id.* ¶¶ 7–12. Records from Western Union show that the defendant made various payments to accounts in the Philippines, totaling $1,200, in exchange for the requested acts. *Id.* ¶ 11. During these interactions, he specifically directed the conduct of women as they digitally and orally manipulated young boys' genitals while he watched. *Id.* ¶¶ 7–10. One child was reported to be six years old. *Id.* ¶ 7. The defendant posed as a "medical researcher" to another female Facebook user, saying he was doing an "experiment" for school about how "loving filipino [sic]

2

mothers are with children." *Id.* ¶ 9. He asked for and received pictures of this user kissing the genitals of a prepubescent boy. *Id.* ¶ 10.

The defendant's electronic devices were seized. *Id.* ¶ 13. Investigators found ten recorded Facebook video conferences and at least 41 Skype calls between himself and women who were engaged in sexual acts with children. *Id.* ¶¶ 12–13. All of the Skype videos show the defendant directing the women on what to do to the children. *Id.* ¶ 13. Some of his recordings were shared with other child pornography offenders. *Id.* He sent a recorded video to an offender in Cleveland, Ohio, who was later arrested for possession of child pornography. *Id.* The defendant also possessed at least 3,000 images and videos of child pornography which had been available through the internet. *Id.* ¶ 14.

### III. Guilty Plea

On June 27, 2018, the defendant pled guilty to one count of a four-count indictment, sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2251(e). *Id.* ¶ 1.

### IV. Sentencing Hearing

A sentencing hearing was conducted on February 21, 2019. *See* Sent. Hr'g Tr., Feb. 21, 2019. The proceedings were recorded on video to develop an accurate record of body language and courtroom atmosphere. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264 (E.D.N.Y. 2004) ("A[n appellate court's] *de novo* review would be factually deficient without a video record of the district court's sentencing hearing."). The defendant did not have family or friends present during the hearing.

### V. Guidelines Range and Statutory Minimum

The base offense level is 32. U.S.S.G. § 2G2.1(a). A series of enhancements are added: four points because the offense involved a minor who had not attained the age of twelve,

3

U.S.S.G. § 2G2.1(b)(1)(A); two points because the offense involved a sexual act, U.S.S.G. § 2G2.1(b)(2)(A); two points because the defendant knowingly engaged in distribution of the content, U.S.S.G. § 2G2.1(b)(3); four points because the material portrays a toddler, U.S.S.G. § 2G2.1(b)(4)(B); two points because the offense involved the use of a computer and interactive computer service, U.S.S.G. § 2G2.1(b)(6)(B)(ii); and five points because there were multiple victims, U.S.S.G. § 2G2.1(d)(1); U.S.S.G. § 3D1.4. Three points were deducted for acceptance of responsibility and notification in a timely matter to enter a plea deal, U.S.S.G. § 3E1.1(a); U.S.S.G. § 3E1.1(b). *See* PSR ¶¶ 22–80.

The total offense level is 53. *Id.* ¶ 81. Because the level is in excess of 43, the offense level is treated as level 43. *Id.* The total criminal history is zero, which establishes a criminal history category of I. *Id.* ¶ 85. The guideline imprisonment term is life, but the statute carries a minimum term of 15 years and a maximum of 30 years. *Id.* ¶ 122–23; *see also* 18 U.S.C. § 2251(a); *id.* § 2251(e). Thus, the restricted guideline term of imprisonment is 360 months. PSR ¶ 123.

## VI. Law

The United States Sentencing Guidelines (the "Guidelines") are advisory rather than mandatory, allowing for judicial discretion. *United States v. Booker*, 543 U.S. 220, 245 (2005). "A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). If a district court judge determines that justifications are so compelling, he or she may impose a sentence outside the range of the Guidelines. *Id.*

The district court must "consider all of the § 3553(a) factors to determine whether they support the sentence requested." *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *see* 18 U.S.C.

§ 3553(a)(1) (the court should consider, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant"). The court must "make an individualized assessment based on the facts presented," *Gall*, 552 U.S. at 50, and "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c).

## VII. 18 U.S.C. § 3553(a) Considerations

### A. Defendant's Background

Liwanag is a 27-year-old permanent resident of the United States. PSR ¶¶ 90, 97. He was born in San Pedro, Philippines and raised in the Philippines by his mother in a middle-class household. *Id.* ¶¶ 90, 92. Until age ten, he nominally lived with his mother and father, but his father traveled frequently for work. *Id.* ¶ 92. The couple separated when the defendant was ten; he never saw his father again. *Id.* After the separation, the defendant continued to live with his mother and his brother, now age 18. *Id.* ¶ 91. An uncle legally adopted the defendant when he was 15 and brought him into the United States in 2012. *Id.* ¶ 97. His mother, brother, and maternal half-brother, age 5, continue to reside in the Philippines. *Id.* ¶ 91.

Liwanag described his childhood as "mediocre." *Id.* ¶ 93. Since age ten, he has suffered from anxiety, depression, and suicidal thoughts. *Id.* He also has difficulty sleeping. *Id.* He was bullied throughout elementary school. *Id.* ¶ 94. The defendant says he never acted out on his suicidal thoughts until he was incarcerated for the instant offense. *Id.* ¶ 103.

Prior to entering the United States, Liwanag attended university in the Philippines to study dental medicine. *Id.* ¶ 106. He withdrew from the program to immigrate to the United States. *Id.* He described himself as an above-average student who had no disciplinary actions. *Id.* ¶ 108. At the time of his arrest, the defendant was a personal trainer. *Id.* ¶ 110.

Since his arrest, the defendant has continued to suffer from the same mental health problems he had as a child. *Id.* ¶ 103. He reports that he has not slept for several months. *Id.* In

September 2018, while in custody, he began cutting his wrists. *Id.* He has also sent emails to family members about wanting to end his life. *Id.* Liwanag has seen the psychologist at the Metropolitan Detention Center, but has declined to take prescribed medication. *Id.*

His adoptive father has ceased all contact with the defendant since his arrest. *Id.* ¶ 97. His mother remains supportive. *Id.* ¶ 90. The defendant strongly desires to reunite with his mother and brothers in the Philippines. Sent. Hr'g. Tr. 16:18–21, Feb. 21, 2019.

### B. Seriousness of Conduct

The defendant's offense has far-reaching negative consequences. Possession of child pornography alone fosters a market for more abuse. *See* Gov't Sent. Mem. 4, Feb. 20, 2019, ECF No. 49 (citing *United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012)). "[T]he mere existence of child pornography represents an invasion of the privacy of the child depicted." *United States v. Norris*, 159 F.3d 926, 930 (5th Cir. 1998).

The defendant played an active role in exploiting his victims by directing the women seen in the videos to perpetrate sexual acts against very young children. He directly victimized at least nine children in the Philippines, while perpetuating the victimization of countless other children through downloading and viewing child pornography. *See* Gov't Sent. Mem. at 4. While the victims in the Philippines have not been identified, four victims have been identified in the media downloaded by the defendant and they have submitted victim impact statements. Gov't Suppl. Letter, Feb. 20, 2019, ECF No. 50 (filed under seal). The statements describe these young people's continued suffering and psychological injury stemming from the trafficking and viewing of images showing their victimization. *Id.* They have requested restitution from the defendant in connection with his possession of media containing images of them. *Id.*

The seriousness of the defendant's offense will likely result in an unsafe and challenging environment in prison. Sexual assault offenders are often at risk of violence at the hands of other inmates, since they are a "disfavored" group within prison populations. *See* Alice Ristroph, *Sexual Punishments*, 15 Colum. J. Gender & L. 139, 159–60 (2006) ("[S]ex offenders ... are subject to heightened abuse from both corrections officers and fellow inmates."); *see also* James E. Robertson, *A Clean Heart and an Empty Head: The Supreme Court and Sexual Terrorism in Prison*, 81 N.C. L. Rev. 433, 462 (2003) ("inmate norms call for the[] savage beating [of sex offenders convicted of victimizing children]"). He will presumably be required to spend time in solitary confinement or areas of increased security because prisoners "will often will go to great lengths to injure or even kill" sex offenders, especially those who have committed crimes against children. Dennis Giever, *Jails* in *Prisons Today and Tomorrow* 414, 448 (Joycelyn M. Pollock ed., 1997). Liwanag's time in prison will undoubtedly be difficult.

## VIII. Sentence

The defendant is sentenced to a 15-year term of imprisonment, the minimum mandated for this offense. This lengthy sentence will inevitably make it challenging for the defendant to reintegrate into society and lead a productive life upon release. He requires the benefit of mental health treatment and intensive rehabilitation, which is not well provided by endless years in prison. Upon his release from prison, Liwanag is likely to be immediately deported to the Philippines. There, he will probably face social and economic hardship because of the nature of his crime and the conditions there.

The court has also considered the prison conditions the defendant will experience; since he will spend so many years in prison, the environment in which he will live and the treatment he will face must be considered in assessing total harm and benefits to the prisoner and society. His

status as a sex offender will likely result in violent abuse from other inmates and isolation. Such conditions during a longer sentence would not serve rehabilitation.

Five years of supervised release are imposed. The main condition of release is that Liwanag not return to the United States. If the defendant is not deported for any reason following his discharge from prison, additional conditions of his supervised release include: (1) he is to comply with applicable state and/or federal sex offender registration requirements; (2) he is not to associate with minors under 18 years old without permission, subject to court-stated exceptions; (3) he shall inform any person with whom he cohabitates that has minor children of his sex offense and the prohibition against association with children; (4) he is not to contact the victims of his offense without permission of the Probation Department; (5) he is not to use an electronic device to access pornography; (6) he will allow the Probation Department to monitor his devices; (7) he will participate in mental health treatment programs as directed by the court and the Probation Department; and (8) he will allow a search of his home, place of employment, and other specified locations.

No fines are being imposed since the defendant has no assets. There is a special assessment of $100. Defendant is subject to a forfeiture order and a restitution order requiring that he pay a total of $18,000 to his victims who have requested payment for his abuse. *See* Minute Entry, Feb. 21, 2019, ECF No. 57; Final Order of Forfeiture, Feb. 25, 2019, ECF No. 55 (filed under seal); Order of Restitution, Feb. 25, 2019, ECF No. 56 (filed under seal). Perpetrators of some child exploitation offenses, including the possession of child pornography, may be required to compensate victims with restitution. *See* 18 U.S.C. § 2259 (victims are entitled to "the full amount of [their] losses," including medical services, necessary

transportation, attorney's fees, and any other losses suffered by the victim by proximate cause of the offense).

The court gave full consideration to the seriousness of the defendant's criminal conduct, his family background and connections, and his history of mental illness. While the defendant has irreparably harmed the victims, he expresses genuine remorse for his actions.

## IX. Conclusion

All relevant issues have been considered, with special attention given to the considerations listed under 18 U.S.C. § 3553(a) to ensure a "sufficient, but not greater than necessary" sentence.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 20, 2019
Brooklyn, New York